## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BARBARA KENNEDY, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 2:18-cv-8599 (ES)(CLW)** |
| **HOEGH AUTOLINERS SHIPPING PTE LTD.,** | **OPINION** |
| **Defendant.** | |

**I.    Introduction**

This matter comes before the Court on the motions of (i) defendant Hoegh Autoliners Shipping PTE LTD. ("Defendant") seeking dismissal of this matter for lack of personal jurisdiction [D.E. 41]; and (ii) plaintiffs Barbara Kennedy ("Barbara") and Alfatah Kennedy ("Alfatah") (collectively, "Plaintiffs") seeking to reopen jurisdictional discovery [D.E. 79]. The Honorable Esther Salas has referred both motions to the undersigned. Upon careful consideration of the parties' submissions, the Court GRANTS Defendant's motion to dismiss and DENIES Plaintiff's motion to reopen jurisdictional discovery.

**II.    Background**

Plaintiffs allege that Barbara was injured in October 2015 while working as a stevedore on a vessel (the "vessel") owned by Defendant and docked at the Port of Newark in New Jersey. D.E. 25 at ¶¶ 1, 3, 9, 13. Plaintiffs claim these injuries were caused by the negligence of Defendant, as well as three related Hoegh entities who since have been dismissed from the action with prejudice. Id. at ¶¶ 6-9; 19-26; D.E. 27. Alfatah brings an action for loss of consortium. Id. at D.E. 25 at ¶ 28. Plaintiffs' action proceeds under 33 U.S.C. § 905(b), which provides for recovery due to "negligence of a vessel."

III.   **Procedural History**

Since removal nearly three years ago, this case has been beset by Plaintiffs' protracted failure to timely prosecute their claims. Because this chronology bears upon the Court's decision on the motions, it is detailed in full.

Plaintiffs initiated this action in New Jersey Superior Court in September 2017. D.E. 1-1. After Plaintiffs amended their state court complaint, the action was timely removed to this Court. D.E. 1; 1-2. At an initial conference in July 2018, the defendants advised Magistrate Judge Mannion[1] of their intention to move to dismiss for lack of service and personal jurisdiction. D.E. 6 at 1.[2] Judge Mannion permitted Plaintiffs limited jurisdictional discovery to be completed by September 4, 2018. Id. After Plaintiffs failed to do so, Judge Mannion allowed Plaintiffs a fourteen-day extension to serve jurisdictional discovery. D.E. 9. Plaintiffs served interrogatories and document requests, most of which did not concern jurisdiction, D.E. 59-1; 59-2, and did not serve deposition notices. Judge Mannion again extended the time to complete jurisdictional discovery, this time to February 15, 2019. D.E. 11.

On February 15, 2019—i.e. the day that jurisdictional discovery was to be completed— Plaintiffs served each then-defendant with 30(b)(6) deposition notices, scheduling depositions for March 22, 2019. D.E. 14-2; 14-3. The notices stated that Plaintiffs would seek testimony as to "[t]he ownership of the vessel"; "[t]he managing agent of the vessel"; and "[i]ts relationship to the other parties defendant in this case." Id. The defendants objected to the notices and sought leave to move to quash, representing that they unsuccessfully sought Plaintiffs' input on these issues

---

[1] This matter was transferred from Judge Mannion to the undersigned in November 2020.

[2] Defendant's motion to dismiss originally sought dismissal for improper service; however, that portion of the motion has been withdrawn. D.E. 78.

numerous times in February and March of 2019. D.E. 14. Plaintiffs did not oppose the request. Plaintiffs then filed a motion to file a second amended complaint. D.E. 16.

At a March 22, 2019 conference, Plaintiffs advised Judge Mannion that they would be willing to withdraw their request for jurisdictional discovery so long as they would be permitted to file a second amended complaint naming as defendants "all of the potential owners of the vessel." D.E. 22 at 3-4. Judge Mannion confirmed that the noticed depositions would not proceed and permitted Plaintiffs to confer with the defendants as to a second amended complaint. Id. at 4-7. Judge Mannion set a plenary fact discovery deadline for August 30, 2019. D.E. 21. Plaintiffs then filed the second amended complaint, which the defendants answered, raising a personal jurisdiction affirmative defense. D.E. 24, 25, 26 at 6.  Plaintiffs then dismissed all defendants other than Defendant. D.E. 27, 29. In August 2019, Defendant advised Judge Mannion that it was awaiting Plaintiffs' responses to Defendant's discovery demands such as certain medical authorizations, which were served in early 2019. D.E. 15 at 3; 59 at 4. Judge Mannion again extended discovery deadlines, ordering depositions to be noticed by September 5, 2019 and fact discovery to close on October 30, 2019. D.E. 32.

Shortly thereafter, Defendant again advised Judge Mannion of Plaintiffs' failure to respond to discovery demands. D.E. 35 at 2. Plaintiffs' counsel responded that "Plaintiff Counsel has communicated to Plaintiff and is aware of the need and willing to sign additional medical authorizations but does not currently have the resources to arrive at our office to sign them. We are awaiting their mailing. As Plaintiff's Counsel's paralegal is currently on vacation this week, Plaintiff's Counsel is unable to work with paralegal to determine whether there are any other document demand deficiencies." Id. Judge Mannion ordered discovery to proceed on a rolling basis and for all documents to be furnished by September 27, 2019. D.E. 36. Plaintiffs then served

a deposition notice on October 16, 2019—more than one month overdue. D.E. 59-5. In October 2019, Judge Mannion extended fact discovery through January 31, 2020, and granted leave for Defendant to file a motion to dismiss under Rule 12(b). D.E. 40.

Defendant timely filed its motion to dismiss. D.E. 41. Plaintiffs' opposition was filed one day late due to technical difficulties, with Plaintiff citing, e.g., the scheduling of the motion "plac[ing] my deadline square within the holidays rendering such challenges as having to complete the brief entirely on my own, where the legal assistants in this office have more experience than I with ECF." D.E. 51. Judge Mannion extended fact discovery to April 30, 2020 and scheduled a conference for April 13, 2020. D.E. 53. Roughly thirty minutes before the conference, Plaintiff submitted a letter to Judge Mannion detailing various discovery issues. D.E. 55. Defendant timely responded to Plaintiffs' letter. D.E. 58, 59.

On June 12, 2020, Judge Mannion issued an Opinion and Order on Defendant's motion to dismiss. D.E. 60. The Opinion discussed in detail the question of whether the vessel was a "time charter," in which case the vessel owner (Defendant) would bear liability; or a "bareboat charter," in which case it would not; in particular, noting a conflict in Defendant's declaration as to this issue. See id. at 5, 15-16. Judge Mannion concluded that additional jurisdictional discovery was in order:

1. The Clerk of the Court shall administratively terminate Defendant's Motion to Dismiss [D.E. 41] without prejudice, allowing a renewed motion upon completion of jurisdictional discovery; . . .

2. The parties shall immediately meet and confer to begin limited jurisdictional discovery, wherein Plaintiffs may notice 2 depositions, request 5 interrogatories, and 10 document requests regarding the "time charter" and "bare boat" issue. Defendant's responses to the paper discovery requests shall be provided within 20 days of the request. The parties have 60 days to complete jurisdictional discovery . . . .

4

Id. at 16.[3]

Subsequent correspondence between the parties shows that, despite Judge Mannion directing Plaintiffs to notice jurisdictional discovery, and despite numerous requests from Defendant, Plaintiffs failed to provide a draft Letter of Request ("LOR") for the deposition of Defendant's Norway-based director Thor Jorgen Guttormsen's ("Guttormsen"), as required under the Hague Evidence Convention. D.E. 65 at 1-3; D.E. 85-1-4; 6. Plaintiffs then sought an order directing the parties to "meet and confer to jointly draft a Letter of Request", D.E. 65 at 4, despite such efforts having already begun and having been hampered by Plaintiff not providing a draft LOR.[4] Plaintiffs submitted a proposed LOR for the first time on July 1, 2020, and the parties conferred on the draft throughout the next two weeks. D.E. 69; D.E. 85-10-14.

At a July 17, 2020 conference, Plaintiff requested and was granted one week to prepare questions to be asked of Guttormsen. D.E. 85 at ¶ 24. Plaintiff failed to do so. Id. at ¶ 25. On July 27, 2020, Judge Mannion granted Plaintiffs a one-day extension "to serve a proposed letter and questions on defense counsel." D.E. 72. Two days later, Plaintiffs changed course and wrote to Defendant: "While initially I thought mutually drafting jurisdictional questions would be necessary, it seems more expedient to allow the Norwegian court to guide the questions, and

---

[3] The Court respectfully notes some confusion with Judge Mannion's directive. The bareboat versus time charter inquiry—while overlapping with the question of jurisdiction to the extent it addresses the degree of an owner's control over a vessel—nevertheless primarily concerns liability, not jurisdiction. At bottom, this issue does not appear dispositive of personal jurisdiction. See, e.g., Torres De Maquera v. Yacu Runa Naviera S.A., 107 F. Supp. 2d 770, 776 (S.D. Tex. 2000) (finding personal jurisdiction over owner of vessel, notwithstanding that owner "entered a bareboat charter . . ., which at first glance would appear to absolve the owner from liability"). Notwithstanding, the matter before the Court is whether Plaintiff has demonstrated entitlement to reopen discovery, and so the Court will not overly burden itself with the contours of that proposed discovery.

[4] Plaintiffs argue that it was Defendant who was being unreasonable in negotiating the proposed LOR and questions. A review of the parties' correspondence does not support this contention.

request follow up questions if necessary." D.E. 85-15 at 2. Defendant rejected this proposal and asked Plaintiffs to prepare proposed questions as had been planned to that point. D.E. 85-16 at 2. Plaintiffs thereafter did not provide a list of questions,[5] nor did they serve additional jurisdictional interrogatories or document demands as directed. D.E. 85 at ¶¶ 32-33.

Per Judge Mannion's Order, the deadline for jurisdictional discovery expired on August 12, 2020. On August 18, 2020, Defendant requested that jurisdictional discovery be closed and that Defendant be granted leave to renew its motion to dismiss. D.E. 75. Counsel for Plaintiffs then missed a September 1, 2020 telephone conference: "without any explanation or ownership for the failure to appear, an associate left messages complaining about not receiving a courtesy call while the conference was in progress and requested that the Court inform her about what had transpired." D.E. 76 at 2. Judge Mannion granted Defendant leave to renew its motion to dismiss and ordered Plaintiffs to file either a joint request or a formal motion to reopen jurisdictional discovery. Id. at 2-3. Defendant did not consent to reopen discovery. D.E. 78-1. Defendant then renewed its motion to dismiss, and Plaintiffs filed their motion to reopen jurisdictional discovery. D.E. 78, 79.

## IV.    Overview of the Parties' Motions

Although the parties' motions concern different forms of relief—Defendant seeks an adjudication, while Plaintiffs seek a discovery extension—the two applications are closely linked. Plaintiffs argue that despite their failures in advancing this case, they should be permitted to continue seeking jurisdictional discovery. Defendant primarily argues that upon the present record, Plaintiffs have failed to establish this Court's personal jurisdiction over Defendant; Defendant further contends that further leave for Plaintiffs to seek to establish such jurisdiction would be

---

[5] Plaintiffs eventually filed a list of proposed questions in November 2020, months after the close of jurisdictional discovery and well after the instant motions were fully briefed. D.E. 98. Defendant objected to the request, noting that the deadline for jurisdictional discovery had expired in August 2020. D.E. 99.

improper in view of the chronology detailed above. This latter point is essentially an argument against Plaintiffs' motion. The Court therefore addresses the motions in two steps: first, Plaintiffs' bid to reopen jurisdictional discovery—which will be denied—and second, Defendant's request to dismiss the matter because the present record fails to establish personal jurisdiction over Defendant—which will be granted.

**V.**     **Plaintiffs' Motion to Reopen Jurisdictional Discovery**

    **a.**     **Background**

Plaintiffs' opening moving papers do not indicate the grounds for their motion to reopen discovery. Although some courts have applied the excusable neglect standard under Fed. R. Civ. P. 6(b) (for which Plaintiffs argue for the first time on reply), see, e.g., Yeoman v. Ikea U.S.A. W., Inc., 2013 U.S. Dist. LEXIS 96720, at *11 (S.D. Cal. July 10, 2013), the weight of authority favors application of Fed. R. Civ. P. 16(b)(4), under which a scheduling order "may be modified only for good cause and with the judge's consent." See, e.g., J.G. v. C.M., 2014 U.S. Dist. LEXIS 56143, at *4 (D.N.J. Apr. 23, 2014) ("Federal Rule of Civil Procedure 16(b)(4) permits the modification of a scheduling order to reopen discovery for 'good cause.'"); R. M. W. v. Homewood Suites, 2012 U.S. Dist. LEXIS 201426, at *24 n.2 (D.N.J. June 28, 2012) (rejecting excusable neglect standard and applying Rule 16 on motion to reopen discovery); e.g., Sweatman v. Coloplast Corp., 2020 U.S. Dist. LEXIS 78907, at *5-6 (D.S.C. May 5, 2020) (same).

    **b.**     **Good Cause Inquiry**

        **i.**     **Plaintiffs' Diligence**

Under Rule 16(b), "[a] finding of good cause depends on the diligence of the moving party. In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence." Globespanvirata, Inc. v. Tex. Instruments, Inc., 2005 U.S. Dist. LEXIS 16348, at *9-

10 (D.N.J. July 11, 2005) (quoting <u>Rent-A-Center v. Mamaroneck Ave. Corp.</u>, 215 F.R.D. 100, 104 (S.D.N.Y. 2003) and citing FED. R. CIV. P. 16 advisory committee's note ("The court may modify the schedule on a showing of good cause if [the deadlines] cannot be reasonably met despite the diligence of the party seeking the extension.")); <u>see, e.g.</u>, <u>Konopca v. FDS Bank</u>, 2016 U.S. Dist. LEXIS 41002, at *4 (D.N.J. Mar. 29, 2016) ("To show good cause, 'the moving party must demonstrate that a more diligent pursuit of discovery was impossible.'") (quoting <u>Alexiou v. Moshos</u>, 2009 U.S. Dist. LEXIS 81815, at *8, 2009 WL 2913960, *3 (E.D. Pa. Sept. 9, 2009)). "The 'good cause' standard is not a low threshold. Disregard for a scheduling order undermines the court's ability to control its docket, disrupts the agreed-upon course of the litigation, and rewards 'the indolent and cavalier.'" <u>J.G.</u>, 2014 U.S. Dist. LEXIS 56143, at *4-5 (quoting <u>Riofrio Anda v. Ralston Purina Co.</u>, 959 F.2d 1149, 1154-55 (1st Cir. 1992)).

Plaintiffs' lack of diligence is self-evident. Jurisdictional discovery was first set to close on September 4, 2018—more than two full years before Plaintiffs filed their instant motion. Since that time, Plaintiffs have missed no fewer than <u>five</u> deadlines specifically concerning jurisdictional discovery (in addition to four separate extensions pertaining to plenary fact discovery). <u>See</u> D.E. 6, 9, 11, 21, 32, 40, 53, 72, 85 at ¶¶ 24-5. During this period, Plaintiffs also served multiple discovery demands unrelated to jurisdiction, missed a filing deadline, reversed course once by temporarily agreeing to withdraw their requests for jurisdictional discovery, did so again by seeking to have the Norwegian court to choose questions to ask Guttormsen, neglected to timely provide a proposed LOR and list of questions, failed to respond to the defendants' discovery demands, and missed a telephone conference. <u>See</u> D.E. 14-2; 14-3; 15; 22; 35; 51; 59-1; 59-2, 65, 85. Plaintiffs have lodged excuses such as a paralegal being on vacation, a deadline falling within the holiday season, and the absence of a courtesy call. <u>See</u> D.E. 35, 51, 76.

Upon these facts, this matter's significant delays were quite clearly caused by Plaintiffs' lack of diligence. Stated otherwise, a more diligent pursuit of discovery was certainly possible. To overlook Plaintiffs' patterns of neglect in advancing jurisdictional discovery would be to "reward[] the indolent and cavalier," J.G., 2014 U.S. Dist. LEXIS 56143 (quotation marks omitted), which the Court simply will not do. Indeed, courts routinely deny such applications upon similar facts. See, e.g., Leyse v. Bank of Am. Nat'l Ass'n, 2019 U.S. Dist. LEXIS 100213, at *3, 7 (D.N.J. June 14, 2019) (declining to reopen discovery where party was granted multiple extensions over approximate eighteen-month period); Fleckenstein v. Crawford, at *3 n.3, 4 (M.D. Pa. Mar. 23, 2018) (same).

Finally, the Court rejects Plaintiffs' argument (raised for the first time on reply) that they should be excused from compliance with the discovery deadlines based upon information obtained from Norwegian authorities that it takes one to three months to process LORs, and therefore, that the deadlines would not have been met even if Plaintiffs had acted diligently. First, being that several of Judge Mannion's orders directed Plaintiffs to serve jurisdictional discovery by a date certain, the turnaround time on these requests has no bearing on Plaintiffs' ability to comply. Second, had Plaintiffs met their initial September 2018 deadline (or the several deadlines that immediately followed), then notwithstanding delays from the Norwegian court, jurisdictional discovery certainly could have been completed in time to obviate the instant motion.

In summary, the Court finds that Plaintiffs have failed to demonstrate that they acted diligently for purposes of good cause under FED. R. CIV. P. 16(b).

### ii.  **Additional Factors**

While diligence is the centerpiece of the good cause analysis, some courts also assess "the importance of the evidence, [ ] the logistical burdens and benefits of re-opening discovery, [and]

prejudice to the non-moving party." J.G., 2014 U.S. Dist. LEXIS 56143, at *5 (citing Marlowe Patent Holdings LLC v. Dice Electronics, LLC, 293 F.R.D. 688, 701 (D.N.J. 2013)). These factors further support the above conclusion. The evidence Plaintiffs seek certainly is important, as it may allow them to demonstrate jurisdiction. As noted, though, the Court is somewhat skeptical that the inquiries Judge Mannion has permitted will yield a meaningful finding on the question of personal jurisdiction. Indeed, while Judge Mannion permitted Plaintiffs to conduct "limited jurisdictional discovery" consisting of questions "regarding the 'time charter' and 'bare boat' issue", D.E. 60 at 16, Plaintiffs' proposed questions seek a far wider breadth of information. See D.E. 98 (asking about, e.g., connections between Defendant and related entities, policies and procedures pertaining to vessel, and scope of Defendant's marketing efforts). The Court does not pass upon whether these are proper jurisdictional inquiries, except to say that they certainly overstep the time charter versus bare boat issue which is the boundary of the expressly "limited" discovery permitted by Judge Mannion.

This leads to the issue of the logistical burdens and benefits of reopening discovery. In view of the above, a determination as to the propriety of Plaintiffs' proposed discovery will require the Court to assess Plaintiffs' proposed questions not only as a general matter, but through the lens of what appears to be a disparity in the discovery permitted by prior court order and that which will yield a satisfactory answer to the jurisdictional question. Plaintiffs then will need to execute discovery on an international non-party pursuant to the Hague Convention. Taken together—and coupled with Plaintiffs' repeated delays in even reaching this point in the proceedings—the Court finds that reopening discovery will be uniquely burdensome in time, effort, and cost. See, e.g., Crown Bay Marina, L.P. v. Reef Transp., LLC, 2020 U.S. Dist. LEXIS 157406, at *10 (D.V.I. Aug. 31, 2020) (denying reopening of discovery that "would inevitably impose a substantial

burden on [opposing party] as well as additional costs, and could even further delay the trial of this consolidated case"); Sweet v. Lockheed Martin Corp., 2009 U.S. Dist. LEXIS 140078, at *6 (N.D. Ga. Aug. 21, 2009) (denying motion to reopen where "reopening discovery would cause unnecessary delay, increase litigation costs and be burdensome on Defendant"). These considerations also speak to the issue of prejudice, which likewise is present here. The Third Circuit has cited as an example of prejudice "the excessive and possibly irremediable burdens or costs imposed on [an] opposing party." Adams v. Trs. of the N.J. Brewery Employees' Pension Tr. Fund, 29 F.3d 863, 874 (3d Cir. 1994) (quoting Scarborough v. Eubanks, 747 F.2d 871, 876 (3d Cir. 1984)); see, e.g., Martsolf v. Jbc Legal Grp., P.C., 2008 U.S. Dist. LEXIS 138714, at *2-3 (M.D. Pa. Mar. 13, 2008) (denying motion to reopen discovery because "reopening discovery would prejudice defendant through costs,  time, and attorneys' fees to defend discovery that plaintiff could have sought within case management deadlines").

In summary, the additional factors relevant to the good cause inquiry reinforce the Court's conclusion that Plaintiffs' motion to reopen discovery should be denied.

## VI.   Defendant's Motion to Dismiss

### a.   Personal Jurisdiction

Defendant primarily seeks dismissal for lack of personal jurisdiction under FED. R. CIV. P. 12(b). The Third Circuit has framed personal jurisdiction as follows:

> [a] federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law. New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. Thus, parties who have constitutionally sufficient "minimum contacts" with New Jersey are subject to suit there.

Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted). "Due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate

defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" <u>Helicopteros Nacionales De Colombia v. Hall</u>, 466 U.S. 408, 414 (1984) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)) (quotation marks omitted). Significantly, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being hauled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) (citations omitted).

### i.  **Specific Jurisdiction**

Although "[p]ersonal jurisdiction may be established through general jurisdiction or specific jurisdiction over a defendant", <u>Horowitz v. AT&T Inc.</u>, 2018 U.S. Dist. LEXIS 69191 (D.N.J. Apr. 25, 2018), at *14 (citing <u>Goodyear Dunlop Tires Operations, S. A. v. Brown</u>, 564 U.S. 915, 919 (2011)), Plaintiff's arguments in opposition concern the latter. The Court therefore will limit its discussion accordingly.[6]

As summarized in <u>Horowitz</u>,

> [s]pecific jurisdiction may be established over a defendant where the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. More specifically, specific jurisdiction requires that: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair. . . . Once specific jurisdiction is

---

[6] The Court briefly notes that general jurisdiction likewise is absent. "[A] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 127 (2014) (quoting <u>Goodyear</u>, 564 U.S. at 919. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. <u>Id.</u> at 137 (citing <u>Goodyear</u> and citing <u>Helicopteros</u>, 466 U.S. at 414 n.9). General jurisdiction requires greater contacts than specific jurisdiction does. <u>Nicolaisen v. Toei Shipping Co.</u>, 722 F. Supp. 1162, 1164 (D.N.J. 1989). Because Plaintiffs fail to establish the latter, it follows that the former also is missing.

> established, a defendant can be sued in the jurisdiction only in the matter from which the jurisdiction arises.

Id. at *15-17 (citations and quotation marks omitted).

"Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007) (citing General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller, 384 F.3d at 97 (citing cases). With this said,

> [o]nce the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . . At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

Id. at 101 n.6 (quoting Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990)).

## 1. Whether Defendant Purposefully Directed Its Activities at Residents of New Jersey

To satisfy the first prong for specific jurisdiction, "what is necessary is a deliberate targeting of the forum." O'Connor, 496 F.3d at 317. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." De James v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Here, Guttormsen's sworn declaration explains the following: Defendant is a Singapore corporation and a subsidiary of a Norway corporation. D.E. 43 at ¶¶ 2-3. It was the vessel's owner

at the time of Barbara's alleged injury, but it did not operate the vessel or employ any of the vessel staff, nor was it responsible for any of the vessel's operations, nor did it contract for performance of stevedore services on the vessel while docked at Port Newark. Id. at ¶¶ 4-5, 8-11. The vessel's staff worked at the direction not of Defendant but of Hoegh Autoliners A/S, id. at ¶¶ 7, 18, which as noted, has been dismissed from the case. Defendant did not employ any vessel officers or crew members, or anyone with the responsibilities set forth in the vessel's Cargo Quality Manual or Cargo Securing Manual. Id. at ¶ 8-9. Defendant has no corporate offices, assets, bank accounts, or employees in New Jersey, nor was it involved in arranging the vessel's call at the time of Barbara's alleged injuries. Id. at ¶ 12.

Plaintiffs' opposition utterly fails to rebut these facts. This is largely because their opposition relies on unfounded assertions and documents lacking proper foundation—the exact opposite of the "sworn affidavits or other competent evidence" constituting "actual proofs, not mere allegations" required to successfully oppose Defendant's motion. See Miller, supra. More specifically, Plaintiffs cite to a Hoegh Autoliners website, the Hoegh Autoliners Quality manual, a deck log book, and a third-party subpoena response. D.E. 89-11-14. There are multiple problems with these references. First is that the materials do not appear to say what Plaintiffs say they do; most notably, nowhere do they specifically reference Defendant (as opposed to the other Hoegh entities which have been dismissed from the case). Second, even if they did, none of the information cited establishes that Defendant undertook "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." De James, supra. Finally, Plaintiffs attach these materials to their attorney declaration, stating only that "Defendants provided [this] discovery to Plaintiffs' counsel". D.E. 88 at ¶ 15 (emphasis added). This is similar to what Plaintiffs did in

previously opposing Defendant's motion to dismiss. Judge Mannion rejected these materials, writing:

> [A]ttached [to the attorney declaration] are documents purporting to be a "Hoegh Autoliners Cargo Quality" manual, a M/V Hoegh Masan Deck Log, and a M/V Hoegh Masan Injury Report. . . . The Court has no way of knowing what entity originated the documents or which defendant, if any, produced these records in discovery. Counsel has not identified any deposition testimony or other competent evidence to link these three documents to Hoegh PTE versus any of the Hoegh entities voluntarily dismissed by the Kennedys. The Court therefore has no choice but to <u>sua sponte</u> strike each of these three exhibits.
>
> Without more, it is clear the Kennedys have not met their burden to oppose Hoegh PTE's motion with competent evidence.

D.E. 60 at 16. As before, Plaintiffs have failed to oppose Defendant's motion with competent evidence.

Plaintiffs' other arguments are to no avail. They seek to distinguish <u>De James</u> on the ground that "a mere google search demonstrates that Hoegh PTE is not a third party, as [in] <u>DeJames</u> . . . , but a related entity"; that "sufficient contacts were had by one of the related entities"; and that one such entity is Defendant's parent company. D.E. 87 at 9, 14-15. Setting aside the issue of Plaintiffs attempting to establish jurisdiction based upon "a mere google search", Plaintiffs provide no credible evidence that any of these entities possessed contacts with New Jersey sufficient for the exercise of personal jurisdiction. Neither, for that matter, do Plaintiffs demonstrate control by Defendant's purported parent over Defendant to establish personal jurisdiction over Defendant based upon the parent's contacts. <u>See</u> <u>MSA Prods. v. Nifty Home Prods.</u>, 2014 U.S. Dist. LEXIS 4590, at *8 (D.N.J. Jan. 14, 2014) (discussing requirements for assertion of personal jurisdiction over subsidiary based on control by parent).

The Court therefore finds this case on all fours with <u>DeJames</u>, which, as here, involved an injury sustained on a boat that belonged to a foreign corporation and was moored in New Jersey. 654 F.2d at 282-83. In holding personal jurisdiction to be lacking, the Third Circuit wrote that the

> [defendant] received no economic benefit, either direct or indirect, from residents of New Jersey. Although it could be argued that [defendant] receives some derivative benefit from . . . the fact that the charterers of the vessel were permitted to unload cars in New Jersey, we believe that this attenuated benefit is insufficient to support the assertion of personal jurisdiction. . . . This derivative benefit is similar to the benefit that the local retailer and the regional distributor in World-Wide Volkswagen derived from the fact that the cars they sold could freely travel across state lines and stop within the forum state. . . . [T]his derivative benefit was found insufficient to support personal jurisdiction over the defendants in World-Wide Volkswagen, and we likewise find it insufficient to support personal jurisdiction over [defendant] in New Jersey. . . .
>
> [W]e must focus on the defendant's conduct to determine whether the nature of this conduct can be said to have put the defendant on notice that it may be called to defend its actions in the forum state. . . . [T]he Supreme Court put to rest the notion in World-Wide Volkswagen that this kind of foreseeability alone is a sufficient basis for personal jurisdiction under the due process clause. If it were sufficient, the Supreme Court noted, (e)very seller of chattels would in effect appoint the chattel his agent or service of process. . . . <u>The fortuitous circumstance that the owners chose to dock in New Jersey is insufficient to support the assertion of jurisdiction over [defendant] under the New Jersey long-arm rule.</u>

<u>Id.</u> at 285-86 (emphasis added; citations and quotation marks omitted). The Court sees no reason to depart from <u>DeJames</u>' reasoning and conclusion.

Finally, Plaintiffs lodge arguments based on <u>Scindia Steam Navigation Co. v. De Los Santos</u>, 451 U.S. 156 (1981); <u>O'Connor</u>, 496 F.3d 312; and <u>Davis v. Portline Transportes Mar. Internacional</u>, 16 F.3d 532 (3d Cir. 1994). <u>Scindia</u> and <u>Davis</u> do not discuss personal jurisdiction at all; their only apparent overlap with this case is that they involved injuries sustained by longshore workers. <u>O'Connor</u> is readily distinguishable in that, unlike here, the record there

16

demonstrated "claim-specific contacts [that] do amount to purposeful availment. . . . Through these acts, [defendant] deliberately reached into [the forum state] to target two of its citizens." 496 F.3d at 318 (citing cases).

Because Plaintiffs are unable to satisfy the first requirement for specific jurisdiction, the Court need not address the second or third prongs. See, e.g., Overland Ventures, LLC v. Giant Tyres USA, LLC, 2014 U.S. Dist. LEXIS 129328, at *9 (S.D. Miss. Sep. 16, 2014) (because "the first requirement for establishing a prima facie case of personal jurisdiction has not been met, . . . it is unnecessary to examine whether the exercise of jurisdiction over [defendant] would comport with due process") (citing Cycles, Ltd. v. W.J. Digby, Inc., 889 F.2d 612, 621 (5th Cir. 1989)). The Court concludes that Plaintiffs have failed to sustain their burden of demonstrating that the facts before the Court establish personal jurisdiction over Defendant.

### b. FED. R. CIV. P. 41(b) Dismissal

As a general matter, "dismissal for lack of personal . . . jurisdiction . . . is a dismissal without prejudice." EF Operating Corp. v. Am. Bldgs., 993 F.2d 1046, 1048-49 (3d Cir. 1993) (citing Lucas v. Gulf & Western Indus., Inc., 666 F.2d 800, 805 (3d Cir. 1981)).[7] Defendant passingly seeks dismissal with prejudice for failure to prosecute under FED. R. CIV. P. 41(b). D.E. 78 at 2.[8] In view of the above, the Court will not address this alternative ground for dismissal. See, e.g., Sierra Club v. Wellington Dev.- WVDT, LLC, 2008 U.S. Dist. LEXIS 39535, at *20 (W.D.

---

[7] There is some authority providing for this form of relief where there is no reasonable basis for the exercise of personal jurisdiction. See Robinson v. Section 23 Prop. Owner's Ass'n, 2019 U.S. Dist. LEXIS 9637, at *3 n.2 (D.N.J. Jan. 22, 2019) (collecting cases). Because, as discussed, Plaintiffs have failed to fully explore the Court's jurisdiction over Defendant, the Court does not deem this one such case.

[8] Defendant does not discuss the six-factor test set forth in Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863 (3d Cir. 1984) applicable to Rule 41(b) dismissal.

Pa. May 13, 2008) ("Since we lack jurisdiction, we do not reach Defendant's alternative arguments [for dismissal].").[9]

## VII.   <u>Conclusion</u>

For the reasons stated herein, the Court grants Defendant's motion to dismiss for lack of personal jurisdiction and denies Plaintiffs' motion to reopen jurisdictional discovery. An appropriate order follows.

Dated: February 16, 2021

<i>/s/ Cathy L. Waldor</i>
Cathy L. Waldor, U.S.M.J.

---

[9] While true that Rule 41(b) might entitle Defendant to dismissal with prejudice, the Court nonetheless will refrain from such analysis. First, as noted, the want of jurisdiction likely proscribes such an endeavor. Further, while it will stop short of conducting a full <u>Poulis</u> review, the Court notes that <u>Poulis</u> likely would not yield dismissal with prejudice under Rule 41(b), largely in view of the first factor therein: here, unlike many cases where such dismissal is granted, there is (with very minor exception) no indication that Plaintiffs themselves (as opposed to their counsel) bore any responsibility for the failure to prosecute. <u>Cf.</u>, <u>e.g.</u>, <u>Ricks v. Udijohn</u>, 2017 U.S. Dist. LEXIS 1074, at *6 (D.N.J. Jan. 4, 2017) (granting dismissal with prejudice where "Plaintiff's conduct alone appears to be responsible for his failure to prosecute"). Moreover, the alleged injury occurred over five years ago, well past the three-year limitations period for this action. <u>See</u> 46 U.S.C. § 763(a). Thus, barring Plaintiffs' ability to effectuate a significant toll of the statute of limitations, the Court's decision effectively amounts to a dismissal with prejudice. <u>See</u>, <u>e.g.</u>, <u>Green v. Humphrey Elevator & Truck Co.</u>, 816 F.2d 877, 878 n.4 (3d Cir. 1987) "[T]he effect of a dismissal without prejudice where the statute of limitations has run is the same as dismissal with prejudice: it bars a subsequent action.") (quoting <u>Leger v. Ohio Barge Lines, Inc.</u>, 1984 U.S. Dist. LEXIS 18382, at *2 (W.D. Pa. Mar. 22, 1984)).